Anthony Paduano
Noah H. Bunzl
PADUANO & WEINTRAUB LLP
1251 Avenue of the Americas
New York, New York 10020
212-785-9100
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

MICHAEL WOLFF
and VICTORIA WOLFF,

            Plaintiffs,

       -against-

DAVID W. GLENN and
ANGELA GLENN,

           Defendants,

       -and-

DAVID W. SHIPPER, ESQ.,
as ESCROWEE,

           Relief Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

           **COMPLAINT**

           Jury Trial Demanded

           Civ.

Michael Wolff and Victoria Wolff, as and for their Complaint, allege:

## Parties and Jurisdiction

1.    Plaintiffs Michael Wolff and Victoria Wolff ("Purchasers"), husband and wife, are residents and citizens of the State of New York and maintain their primary residence in New York County.

2.     Defendants David W. Glenn and Angela Glenn ("Sellers") are residents and citizens of the State of Utah and maintain a primary residence at 536 West 500 South, Midway, Utah 84049.

3.     Relief Defendant and Escrowee David W. Shipper, Esq. ("Escrowee") is, upon information and belief, an attorney admitted to practice under the laws of the State of New York with a business address at 7 Times Square, 21st Floor, New York, New York 10036.   This action is brought against the Relief Defendant solely in his role as Escrowee and the relief sought is an order directing surrender of the Contract Deposit that he holds.

4.     This Court has diversity jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and because Purchasers and Sellers are citizens of different states.   Purchasers are citizens of the State of New York and Sellers are citizens of the State of Utah.   Relief defendant and Escrowee David W. Shipper, Esq. is a nominal defendant and not a real party-in-interest in this matter.   Pursuant to well-established case law, Mr. Shipper's citizenship is not considered for diversity jurisdiction purposes.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because all or a substantial number of the events giving rise to the claims pleaded herein occurred in New York County and because the property that is the subject of this action is situated in this County.

## Statement of Facts

6.     Sellers and Purchasers executed a Contract of Sale (the "Contract") on or about February 24, 2020 that provided for Purchasers to acquire Unit 2A (the "Unit") in the building located at 130 East End Avenue, New York, New York 10028, together with 72 shares in the cooperative corporation known as 130 East End Avenue Tenants Corporation (the "Corporation") (together with the Unit, the "Apartment").   In connection with the execution of the Contract, Purchasers were required to deliver a Contract Deposit of $375,000 (the "Deposit") to Escrowee.

7.     Pursuant to Paragraph 6.1 of the Contract, the approval of the Board of Directors of 130 East End Avenue Tenants Corporation (the "Board") was required before the Closing specified under the Contract could occur.  Paragraph 6.1 of the Contract states that "[t]his sale is subject to the unconditional consent of the Corporation."

8.     Paragraph 6.2 of the Contract states that Purchaser in good faith must submit to the Corporation or its Managing Agent all required forms and information, attend "one or more personal interviews, as requested by the Corporation," and "promptly submit to the Corporation such further references, data, and documents reasonably requested by the Corporation."

9.     Paragraph 6.3 of the Contract states further that if the consent of the Corporation "is refused at any time, either Party may cancel this Contract by

Notice.  In the event of cancellation pursuant to this ¶ 6.3, the Escrowee shall refund the Contract Deposit to Purchaser."

      10.    Purchaser Michael Wolff is a prominent journalist and author.

      11.    At the time of the execution of the Contract, Mr. Wolff had several planned projects for 2020 and 2021 from which he expected to derive substantial income.

      12.    Upon execution of the Contract, Purchasers immediately began assembling the information necessary to complete the application provided to them by the Managing Agent for review by the Board.  On March 16, 2020, Purchasers' Broker shared a first draft of their application with Sellers' Broker.  The first draft of the application reflected Purchasers' anticipated income for 2020 on the basis of Mr. Wolff's then-pending projects.

      13.    During the course of February and March 2020, the Coronavirus/COVID-19 pandemic (the "Pandemic") began to materially disrupt global markets as well as key segments of the global transportation, media, and publishing industries.  At least one of Mr. Wolff's major income-producing projects for 2020 required considerable international travel, and by early late March, 2020, it became evident that this one particular project would not proceed in light of the ongoing Pandemic.  Indeed, even if the project were still viable, Mr. Wolff would have had to be willing to risk his health and make numerous transatlantic flights starting in the spring and continuing through the rest of the summer and year.  Further, sources for

the project, many of whom would speak to him only in person, had become unavailable due to Pandemic-related health risks.

14.     Shortly after the first draft of the application was shared, and directly as a result of the Pandemic and related dramatic disruptions in business and travel, Mr. Wolff learned that several other of his major projects for 2020 would be postponed indefinitely or canceled outright.   Thus, it became apparent that Mr. Wolff's financial situation had dramatically changed and his expected income from speaking engagements and film and television projects would also be materially diminished due to Pandemic-related quarantines and closures.

15.     Accordingly, Mr. Wolff became aware that his projected 2020 and 2021 income would be materially, and potentially drastically, lower than what was anticipated at the time of the execution of the Contract and at the time that the first draft of the application was shared with Sellers.

16.     Immediately coming to the realization of the effect of the Pandemic upon their income, Purchasers informed their Broker of these grim realities and he advised them that they in good faith could not proceed with the submission of the first draft of the application that had been prepared to date.   Instead, Purchasers understood that they were obligated to revise the first draft of the application to appropriately and accurately reflect Mr. Wolff's current and lessened income stream.

17.     Notwithstanding these developments, Purchasers remained committed to purchasing the apartment and were ready and willing to proceed with

the transaction because they were very confident in Mr. Wolff's capabilities once the disruption caused by the Pandemic stabilized. Despite the current diminished income projections, Purchasers still had what they understood to be a very attractive package for the Board, in the form of fully-approved written mortgage financing, a substantial asset picture and a strong history of income generation.

18. On March 25, 2020, Purchasers' Broker shared a second draft application with Sellers' Broker that reflected the reality that Purchasers' financial situation was required to be revised downward due to the Pandemic and the attending worldwide financial collapse. In connection with the second draft of the application, Purchasers submitted a letter from their CPA disclosing that Mr. Wolff's current income stream had been impaired because of the global health crisis.

19. Mr. Glenn is an expert in finance and founded Western Heritage Capital, after previously holding senior roles at prominent Wall Street firms Cerberus Capital Management, Lightyear Capital and Greenhill Capital Partners. Mr. Glenn was unhappy with Purchasers' revised financial projections and in an angry phone conversation with Purchasers' Broker expressed indignation that Purchasers' financial projections had changed as a result of the Pandemic. Despite lacking any basis to do so, Mr. Glenn made the absurd statement that Purchasers were trying to sabotage the deal by accurately reporting their updated financial circumstances.

20. Mr. Glenn was unhappy with Purchasers' revised financial disclosures, and suggested, through his Broker, that Purchasers submit misleading financial disclosures to the Board that presented an unduly optimistic picture of

Purchasers' projected income, namely by over-emphasizing the earlier projections in the initial first draft of the application.  However, Mr. Wolff rejected that approach because he knew that Purchasers had an obligation to submit accurate and non-misleading financial disclosures to the Board.  Accordingly, Purchasers' submission to the Board reflected Purchasers' revised and lessened financial posture.

21.    On or around March 26, 2020, Purchasers submitted their completed Application ("the Application") to the Managing Agent for the Apartment as required by the Contract.  On March 31, 2020, the Managing Agent requested several formatting revisions to the Application.  Purchasers promptly made the requested revisions and submitted the Application (as updated) to the Managing Agent for submission to the Board on or about April 3, 2020.

22.    On April 13, 2020, the Managing Agent submitted several written questions to Purchasers concerning the Application.  Purchasers' Broker promptly responded with written answers to the questions that same day.

23.    On April 17, 2020, the Board President directed several written questions to Purchasers concerning the Application.  The Board observed that it had "significant concerns about the applicants' financial wherewithal for maintaining the Apartment."

24.    On April 17, 2020, Purchasers' Broker responded in writing to the Board and answered several of the Board's questions.  On April 20, 2020, Mr. Wolff submitted a written response to address the remainder of the Board's

questions.  In the letter, Mr. Wolff addressed his change in financial circumstances as a result of the Pandemic.

25.     The Board did not request an interview with Purchasers at any time.

26.     On April 24, 2020, the Managing Agent informed the Parties that the Board "has reviewed and not accepted the application for the above referenced apartment to Michael Wolff and Victoria Wolff."

27.     In light of the Board's failure to give its assent to the Contract and transfer the Unit, on April 24, 2020, counsel for Purchasers wrote to counsel for Sellers and requested the return of the Deposit pursuant to Paragraph 6.3 of the Contract.

28.     On April 28, 2020, counsel for Sellers wrote to counsel for Purchasers and stated that "Sellers have objected to my returning the Contract Deposit to your client."

29.     On April 30, 2020, counsel for Purchasers wrote to counsel for Sellers and requested that Sellers identify the good faith basis for Sellers' objection to the return of the Deposit.

30.     Counsel for Sellers has not responded to that Request.

31.     Pursuant to the Contract, Sellers must return the Deposit to Purchasers.  Sellers are in breach of the Contract because they have failed to return the Deposit, despite having no valid reason to do so.

32.     Purchasers are entitled to the return of the Deposit because they have established that they have fully satisfied all duties and conditions under the Contract.  At all times, Purchasers have proceeded in good faith to attempt to close the sale and obtain Board approval.

33.     On May 1, 2020, Escrowee confirmed that he had custody of the Deposit and pursuant to Purchasers' demand that he would not release the Deposit to Sellers without consent of Purchasers.   Sellers are wrongfully causing the Escrowee to withhold distribution of the Deposit from Purchasers who have good and better financial opportunities for the Deposit.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

34.     Plaintiffs reallege and incorporate herein by reference the allegations in paragraphs 1 through 33 hereof.

35.     The Contract represents a valid and binding written agreement between Sellers and Purchasers.

36.     Purchasers did not obtain approval from the Board for acquisition of the shares pertaining to the Unit and therefore the Contract is canceled by its operation and express terms.  Pursuant to Paragraph 6.3 of the Contract, Purchasers are entitled to the return of the Deposit.  Sellers have breached the Contract by failing to return the Deposit.

37.      Sellers have wrongfully and without a good faith basis instructed the Escrowee not to release the Deposit to Purchasers.

38.    By reason of the foregoing, Purchasers have sustained injury and damages due to Sellers' breach of Contract and are entitled to compensatory damages, including, but not limited to, the return of the Deposit held by the Escrowee, interest and other damages to be proved at trial.

**SECOND CAUSE OF ACTION**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

39.    Plaintiffs reallege and incorporate herein by reference the allegations in paragraphs 1 through 38 hereof.

40.    Because the Board has not approved the transfer of the Unit to Purchasers, the Contract has been canceled, and pursuant to the express terms of the Contract, the Deposit must be returned to Purchasers.

41.    Despite demand made upon Sellers for return of the Deposit, they have failed to respond with a reason as to why they continue to hold the Deposit, much less explain any good faith basis for not returning the Deposit.

42.    On information and belief, Sellers have no good faith basis to retain the Deposit and are refusing to do so to pressure and frustrate Plaintiffs.

43.    Sellers have acted in a manner that deprives Purchasers of the right to receive the expected benefits pursuant to the Contract.

44.    Sellers have engaged in conduct that has breached the implied covenant of good faith and fair dealing that attends the Contract.

45.    By reasons of the foregoing, Plaintiffs have sustained injury and damages by reason of Sellers' breach of the implied covenant of good faith and fair dealing that attends the Contract and are entitled to compensatory damages,

including, but not limited to, the return of the Deposit held by the Escrowee, interest, attorneys' fees and consequential damages to be proved at trial.

## THIRD CAUSE OF ACTION
### (Specific Performance of the Contract)

46.     Plaintiffs reallege and incorporate herein by reference the allegations in paragraphs 1 through 45 hereof.

47.     Purchasers were not approved by the Board and the Contract is canceled by its terms.  Pursuant to the Contract, Sellers are required to return the Deposit.

48.     Sellers have knowingly and intentionally breached the Contract by failing to return the Deposit and directing the Escrowee to retain the Deposit.

49.      By reason of the foregoing, Plaintiffs have sustained injury and damages and are entitled to specific performance of the Contract, including, but not limited to, an Order of the Court directing the return of the Deposit held by the Escrowee and other relief to be proved at trial.

## FOURTH CAUSE OF ACTION
### (Declaratory Judgment as to the Escrowee)

50.     Plaintiffs reallege and incorporate herein by reference the allegations in paragraphs 1 through 49 hereof.

51.     As described herein, Defendants are liable to Plaintiffs for breach of contract and for breach of the implied covenant of good faith and fair dealing.

52.    An actual dispute and controversy exists with respect to whether Defendants are in breach of the Contract and/or the implied covenant of good faith and fair dealing.

53.    An actual dispute or controversy exists as to whether Defendants owe consequential damages to Plaintiffs, in an amount no less than the amount of the Deposit.

54.    Escrowee is adhering to the direction of Defendants, which direction is wrong and contrary to law.

55.    By reason of the foregoing, a declaration from the Court is necessary to determine the rights and obligations of the parties under the Contact and by that Plaintiffs are entitled to a Declaration that the Deposit held by the Escrowee pursuant to Paragraph 27 of the Contract shall be delivered to Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment in their favor as follows:

a.    Damages against Defendants in an amount to be determined at trial to compensate Plaintiffs for all monetary and/or economic damages that they have suffered in an amount of no less than $375,000;

b.    Consequential damages against Defendants in amounts the Plaintiffs prove at trial;

c.    Pre- and post-judgment interest against Defendants in an amount to be proved at trial;

d.      Plaintiffs' reasonable attorneys' fees and costs against Defendants;

e.      An Order to the Escrowee directing that the Deposit be delivered to Plaintiffs; and

f.      Such further and other relief that the Court deems just and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a jury trial on all issues to be tried.

Dated:   New York, New York
         May 11, 2020

PADUANO & WEINTRAUB LLP


By: /s/ Anthony Paduano
   ————————————————
        Anthony Paduano
        Noah H. Bunzl
   1251 Avenue of the Americas, Ninth Floor
   New York, New York 10020
   (212) 785-9100
   ap@pwlawyers.com
   nhb@pwlawyers.com

   Attorneys for Plaintiffs