UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

| | | |
|---|---|---|
| MICHAEL WOLFF and VICTORIA WOLFF, | : | Case No.: 1:20-cv-03651-ER |
| | : | |
| Plaintiffs, | : | |
| | : | |
| -against- | : | **ANSWER WITH** |
| | : | **AFFIRMATIVE DEFENSES** |
| DAVID W. GLENN and ANGELA GLENN, | : | **AND COUNTERCLAIMS** |
| | : | |
| Defendants, | : | |
| and | : | |
| | : | |
| DAVID SHIPPER, ESQ., as Escrowee, | : | |
| | : | |
| Relief Defendant. | : | |

------------------------------------------------------------------X

Defendants, David W. Glenn and Angela Glenn (collectively, "Defendants" or "Sellers"), by and through their undersigned attorneys, Offit Kurman, P.A., respectfully submit this Answer with Affirmative Defenses and Counterclaims in response to the Complaint of Plaintiffs Michael Wolff and Victoria Wolff  (collectively, "Plaintiffs" or "Purchasers"), dated and filed May 11, 2020, and allege as follows:

### ANSWER

In response to the specific allegations contained in the Complaint, Defendants state as follows:

### Parties and Jurisdiction

1.      Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 of the Complaint, except admit and aver that through their real estate broker they conveyed such information to Defendants during negotiations leading to execution of a contract of sale between the parties.

2.      Defendants admit the allegations in Paragraph 2 of the Complaint.

3.      Defendants deny the apparently garbled allegations in paragraph 3 of the Complaint. Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 of the Complaint that are not garbled, except admit and aver that David W. Shipper, Esq. is a New York attorney and the Escrowee under the contract of sale that is the subject matter of this litigation and maintains an office at the address stated in Paragraph 3 of the Complaint.

4.      Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 of the Complaint and refer all questions of the law to the Court, except admit and aver that, upon information and belief, Purchasers and Sellers are residents of different states. For the purposes of this Answer, Defendants agree that David W. Shipper, as Escrowee, is a nominal defendant so that joinder of him as a defendant does not destroy diversity of citizenship.

5.      Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5 of the Complaint and refer all questions of law to the Court. For the purposes of this Answer, Defendants admit that venue is proper in this District.

**Statement of Facts**

6.      Defendants admit the allegations in Paragraph 6 of the Complaint.

7.      With respect to the allegations in Paragraph 7 of the Complaint, Defendants refer the Court to the writing – the Contract – for a full and complete statement of its contents, which document speaks for itself. Defendants deny all allegations inconsistent with the contents thereof.

8.      With respect to the allegations in Paragraph 8 of the Complaint, Defendants refer the Court to the writing – the Contract – for a full and complete statement of its contents, which

document speaks for itself. Defendants deny all allegations inconsistent with the contents thereof.

9.     With respect to the allegations in Paragraph 9 of the Complaint, Defendants refer the Court to the writing – the Contract – for a full and complete statement of its contents, which document speaks for itself. Defendants deny all allegations inconsistent with the contents thereof.

10.    Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint, except admit and aver that the allegations are consistent with Defendants' general understanding of plaintiff Michael Wolff's profession and reputation.

11.    Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 of the Complaint, except admit and aver that plaintiff Michael Wolff and/or his representatives on his behalf represented that he had several planned projects for 2020 and 2021 for which he planned to derive substantial income.

12.    Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 of the Complaint, except admit and aver that a first draft of Plaintiffs' application was shared with Plaintiffs on or about March 16, 2020, showing anticipated income based upon pending projects.

13.    Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 of the Complaint, except admit and aver that there was a global pandemic in the early part of 2020.

14.    Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 of the Complaint.

15.     Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of the Complaint.

16.     Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 of the Complaint.

17.     Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 of the Complaint.

18.     Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 of the Complaint, except admit and aver  that a second draft the application was submitted to Defendants' broker on or about March 25, 2020, reflecting a dramatic change not just in projected income but also in existing assets, along with a letter from an accounting firm  purporting to support Plaintiffs' change in basic financial condition.

19.     Defendants deny the allegations in Paragraph 19 of the Complaint, except admit and aver that Mr. Glenn is engaged in the business of finance, founded Western Heritage Capital, and previously held roles at Cerberus Capital Management, Lightyear Capital and Greenhill Capital Partners.

20.     Defendants' deny the allegations in Paragraph 20 of the Complaint, except admit and aver that Mr. Glenn doubted, and continues to doubt, the accuracy of Mr. Wolff's revised financial disclosures.

21.     Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 of the Complaint, except admit and aver that Defendants submitted a bad faith application to the managing agent for the Board on or about March 26, 2020.

22.     Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 of the Complaint, except admit and aver that the Board was influenced by Plaintiffs' bad faith submission.

23.     Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 of the Complaint, except admit and aver that the Board was influenced by Plaintiffs' bad faith submission.

24.     Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24 of the Complaint.

25.     Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25 of the Complaint.

26.     Defendants admit the allegations in Paragraph 26 of the Complaint.

27.     Defendants deny the allegations in Paragraph 27 of the Complaint, except admit and aver that in response to Plaintiffs' bad faith submission the Board did not approve the proposed transaction, which decision was followed by the request for the return of the Deposit.

28.     Defendants admit the allegations in Paragraph 28 of the Complaint.

29.     Defendants admit the allegations in Paragraph 29 0f the Complaint.

30.     Defendants deny the allegations in Paragraph 30 of the Complaint.

31.     Defendants deny the allegations in Paragraph 31 of the Complaint.

32.     Defendants deny the allegations in Paragraph 32 of the Complaint.

33.     Defendants deny the allegations in Paragraph 33 of the Complaint, except admit and aver that the Escrowee has confirmed that he maintains custody of the Deposit and will release it in accordance with a joint direction from the parties or an order of the Court.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

34.     With respect to Paragraph 34 of the Complaint, Defendants repeat and reallege their responses to each allegation contained in Paragraphs 1 – 33, inclusive, and incorporate the same herein by reference as if set forth in full.

35.     Defendants admit the allegations in Paragraph 35 of the Complaint.

36.     Defendants deny the allegations in Paragraph 36 of the Complaint, except admit and aver that Plaintiffs did not obtain approval from the Board for the acquisition of the shares pertaining to the Unit.

37.     Defendants deny the allegations in Paragraph 37 of the Complaint, except admit and aver that they objected to the Escrowee's releasing the Deposit to Plaintiffs.

38.     Defendants deny the allegations in Paragraph 38 of the Complaint.

## SECOND CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

39.     With respect to Paragraph 39 of the Complaint, Defendants repeat and reallege their responses to each allegation contained in Paragraphs 1 – 38, inclusive, and incorporate the same herein by reference as if set forth in full.

40.     Defendants deny the allegations in Paragraph 40 of the Complaint, except admit and aver that the Board has not approved the transfer of the Unit to Plaintiffs.

41.     Defendants deny the allegations in Paragraph 41 of the Complaint.

42.     Defendants deny the allegations in Paragraph 42 of the Complaint.

43.     Defendants deny the allegations in Paragraph 43 of the Complaint.

44.     Defendants deny the allegations in Paragraph 44 of the Complaint.

45.     Defendants deny the allegations in Paragraph 45 of the Complaint.

## THIRD CAUSE OF ACTION
### (Specific Performance of the Contract)

46.     With respect to Paragraph 46 of the Complaint, Defendants repeat and reallege their responses to each allegation contained in Paragraphs 1 – 45, inclusive, and incorporate the same herein by reference as if set forth in full.

47.     Defendants deny the allegations in Paragraph 47 of the Complaint.

48.     Defendants deny the allegations in Paragraph 48 of the Complaint.

49.     Defendants deny the allegations in Paragraph 49 of the Complaint.

## FOURTH CAUSE OF ACTION
### (Declaratory Judgment as to the Escrowee)

50.     With respect to Paragraph 50 of the Complaint, Defendants repeat and reallege their responses to each allegation contained in Paragraphs 1 – 49, inclusive, and incorporate the same herein by reference as if set forth in full.

51.     Defendants deny the allegations in Paragraph 51 of the Complaint.

52.     Defendants deny the allegations in Paragraph 52 of the Complaint.

53.     Defendants deny the allegations in Paragraph 53 of the Complaint.

54.     Defendants deny the allegations in Paragraph 54 of the Complaint.

55.     Defendants deny the allegations in Paragraph 55 of the Complaint.

56.     To the extent that there are arguably any claims or allegations in the Complaint that appear not to have been specifically responded to above, Defendants deny each of said claims and allegations.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

57.     Plaintiffs' claims are barred by their beach of the implied covenant of good faith and fair dealing that subsists in the Contract between the parties for reasons described in detail below.

### Second Affirmative Defense

58.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands for reasons described in detail below.

### Third Affirmative Defense

59.     Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' breach of the Contract for reasons set forth in detail below.

### Fourth Affirmative Defense

60.     Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' failure to act in good faith for reasons set forth in detail below.

### Fifth Affirmative Defense

61.     Plaintiffs' claims are barred, in whole or in part, on the grounds that there is a defense founded upon documentary evidence for reasons set forth in detail below.

### Sixth Affirmative Defense

62.     Plaintiffs' claims are barred on the grounds that they have not been damaged and they would be unjustly enriched by the return of the Deposit in light of their breach of the Contract and other wrongful acts for reasons set forth in detail below.

63.     Defendants reserve the right to raise additional defenses as may be discovered during the course of this litigation.

## COUNTERCLAIMS

For their counterclaims against Plaintiffs, Defendants allege as follows:

## PRELIMINARY STATEMENT

1.        The action filed by Plaintiffs against Defendants was nothing more than a race to the Courthouse to obtain leverage in seeking the return of a down payment on a residential purchase of sale. Plaintiffs' claims are factually and legally baseless. Indeed, it is Plaintiffs that are in breach of the operative contract and Defendants who are entitled to the Deposit as liquidated damages for Plaintiffs' bad faith breach of contract.

2.        Defendants bring these Counterclaims for a declaratory judgment and damages arising out of Plaintiffs' bad faith breach of the contract of sale referred to above by presenting questionable and misleading information to the Board of Directors of 130 East End Avenue Tenants Corporation with intent to cause the Board to deny them permission to complete the purchase and thereby procure an excuse for Plaintiffs to avoid their contractual obligations.

## The Parties

3.        Plaintiffs Michael Wolff and Victoria Wolff are, upon information and belief, husband and wife ("Plaintiffs") and reside at 57 West 9th Street, Apartment 1, New York, New York 10011.

4.        Defendants David W. Glenn and Angela Glenn are husband and wife ("Defendants" or "Sellers") and are the owners of 72 shares of 130 East End Avenue Corporation (the "Co-op Corporation") and proprietary tenants under the Co-op Corporation's lease to them of Apartment 2A, 130 East End Avenue, New York, New York (the "Apartment").

**Jurisdiction and Venue**

5.      This Court has jurisdiction pursuant to 28 U.S.C. §1332. This action is between citizens of different states (excluding the Escrowee, a nominal party) and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b).

**Facts**

7.      In February 2020, Plaintiffs and Defendants – as buyer and seller, respectively – executed a written Contract of Sale and accompanying Riders, dated as of February 24, 2020 (collectively, the "Contract") for the purchase by Plaintiffs of Defendants' entire legal interest in the Apartment. A true and correct copy of the Contract is annexed to this Counterclaim as Exhibit 1 and incorporated by reference herein.

8.      The Apartment had been offered for sale on the market from in or around September 2019 with a list price of $4,195,000. Plaintiffs first looked at the Apartment while that list price was still in effect.

9.      At the time the negotiations between Plaintiffs and Defendants were ongoing, the global pandemic was in the news and the subject of public discussion and concern, and instances of infection had already occurred in the United States, affecting, among other things, the financial markets.

10.     It was in this context of an uncertain public health situation that was affecting business worldwide that Plaintiffs offered to purchase the Apartment for $3,750,000 as a discounted counteroffer to the list price. Defendants accepted this counteroffer while still receiving expressions of interest from other prospective purchasers. Plaintiffs were aware of and

benefited from the existence of the uncertainties caused by the pandemic at the time the Contract was agreed to.

11.     A fully executed counterpart of the Contract was delivered by Defendants through their attorney to Plaintiffs through their attorney on or about February 24, 2020, thereby rendering the Contract binding under ¶¶ 17.2, 17.3, and 29 of the Contract.

12.     The Contract defined the "Closing" of the transaction as the "transfer of the ownership of the Shares and Lease" and prescribed on or about April 15, 2020, as the "Scheduled Closing Date" (¶¶ 1.14, 1.15). The Contract did not include a time is of the essence clause, thus permitting the Closing to be re-scheduled for a reasonable subsequent date.

13.     The purchase price for the Apartment was stated in the Contract to be $3,750,000 (¶ 1.16), payable to Defendants in two installments: (i) by deposit in the amount of $375,000 at the time of execution of the Contract, such sum to be held in escrow (the "Contract Deposit") until released to Defendants at the Closing (¶ 27), and (ii) the balance in the amount of $3,375,000 to be delivered to Defendants by bank check or certified check at the Closing (¶¶ 1.16.1, 116.2, 2.2.2).

14.     The Contract expressly contemplated that Plaintiffs might apply to an institutional lender for financing of up to one-half of the purchase price, but further stated that "Purchaser's obligation to purchase under this Contract is not contingent upon issuance of a Loan Commitment Letter" (¶¶ 1.20.2, 1.21). In applying for financing, Plaintiffs were bound by the Contract to provide the Institutional Lender an application "containing truthful and complete information" (¶ 18.2.1).

15.     The Contract named David W. Shipper, Esq., Defendants' closing attorney, as the Escrowee and provided a description of, and address for, the bank account in which the escrowed

funds would be held, namely, an IOLA escrow account maintained by the Escrowee at J.P. Morgan Chase Bank, 60 East 42nd Street, New York, NY 10165.

16.     The terms and conditions of the escrow were agreed to in Article 27 of the Contract, including *inter alia* provisions establishing the Escrowee's duty either to release the escrowed deposit to Defendants at the Closing or, if the Closing ended up not occurring and Defendants objected within 10 days after Plaintiffs demanded return of the deposit, to continue to hold the deposit in escrow until the Escrowee was directed otherwise by a joint notice from the parties or by a final, non-appealable order, judgment or decree of a court of competent jurisdiction (¶ 27.1).

17.     During the last week of February 2020, Plaintiffs executed the Contract and returned it to Defendants' closing attorney with a check in the amount of $375,000 constituting the deposit to be held in escrow by that attorney in his capacity as Escrowee.

18.     Upon receipt of Plaintiffs' check in the amount of $375,000, Escrowee deposited it in his IOLA account at J.P. Morgan Chase Bank, 60 East 42nd Street, New York, NY, in accordance with the terms of the Contract. The check was sent for collection and cleared Plaintiffs' drawee bank, and the proceeds thereof were subsequently credited to the IOLA account and as of this writing remain on deposit in that bank account.

19.     As recognized in ¶ 6.1 of the Contract, the sale of the Apartment was "subject to the unconditional consent of the [Co-op] Corporation", which as a matter of law and practice would be manifested through its Board of Directors.

20.     The Contract accordingly made it the duty of Plaintiffs to submit "in good faith" to the Co-op Corporation or its Managing Agent a so-called "Board Package," described in ¶ 6.2.1 as "an application with respect to this sale on the form required by the Corporation,

containing such data, and together with such documents as the Corporation shall require," within the time prescribed by the Contract.

21.     If after submission of the Board Package, the Corporation failed to give consent or to respond within a stated time period, either Plaintiffs, as purchasers, or Defendants, as sellers, could give notice that the Contract was cancelled, and the Escrowee was thereupon to refund the Contract Deposit to Plaintiffs under ¶ 6.3 unless, however, ¶ 6.4 of the Contract applied.

22.     Paragraph 6.4 of the Contract states in full: "If such consent is refused, or not given, due to Purchaser's bad faith conduct, Purchaser shall be in default and ¶ 13.1 shall govern."

23.     Paragraph 13.1 of the Contract, referred to above, states in pertinent part that "[i]n the event of a default or misrepresentation by Purchaser, Seller's sole and exclusive remedies shall be to cancel this Contract, retain the Contract Deposit as liquidated damages..".

24.     On or about March 19, 2020, Plaintiffs, through their real estate broker at The Corcoran Real Estate Group, shared with Defendants, through their real estate broker at Douglas-Elliman Real Estate, several of the financial components of the Board Package they intended to submit to the Co-op Corporation in support of their request for consent to proceed with their acquisition of Defendants' interest in the Apartment. Plaintiffs' broker stated to defendant David Glenn that such information had already been submitted to and reviewed by the proposed mortgage lender, Wells Fargo; it was thus part of the basis for the lender's approval of the mortgage loan.

25.     The items shared with Defendants, as referred to in paragraph 24 above, included financial statements for Plaintiffs showing net worth in excess of $9.5 million, including over $1 million in anticipated payments for writing projects (plaintiff Michael Wolff being a journalist

and published author of nonfiction books). The clear purpose of Plaintiffs' sharing this financial information with Defendants was to show that they, as purchasers, were well qualified to complete the transaction and that Defendants should be prepared to proceed with a timely closing.

26.    On March 23, 2020, Plaintiffs' broker advised Defendants' broker by telephone that as a result of the Coronavirus pandemic and differing information coming from his advisors, plaintiff Michael Wolff was "panicking," although he "still wanted to purchase the apartment." Therefore, he "wanted to reduce the purchase price to $3.15 million so that he could qualify before the coop board."

27.    Defendants' broker reported this message to defendant David Glenn the same day, and they jointly called Plaintiffs' broker, who confirmed what Defendants' broker had reported.

28.    Mr. Glenn responded that Defendants were willing to discuss a price concession, but it would be irrelevant if Plaintiffs did not believe they could qualify for Corporation consent.

29.    Plaintiffs' broker said he would send updated financial information "to demonstrate their revised financial position."

30.    On March 25, 2020, Plaintiffs' broker provided Defendants revised financial statements showing that Plaintiffs had dramatically changed net worth and no projected income for 2020. According to Plaintiffs' broker, Plaintiffs "still wanted to discuss renegotiating the price of the unit, though their revised financial statements, as shown, would probably not qualify them for board approval." However, the broker added that Plaintiffs "could probably submit improved financial statements" in the final Board Package in exchange for a reduced purchase price, to which Defendants did not agree.

31.    On or about March 27, 2020, Plaintiffs submitted their final Board Package to the Co-op Corporation, with a cover letter signed by the brokers for Plaintiffs and for Defendants.

The financial information included in the Board Package continued to represent that Plaintiffs had no assets and no projected income for 2020, yet they purported to seek consent from the Co-op Corporation for them to proceed with the transaction.

32.     Plaintiffs' Board Package included certain letters from the accounting firm of Taubman Grubman CPAs, and specifically two letters dated March 26, 2020, one concerning the income generated by plaintiff Michael Wolff through his wholly-owned limited liability company and the other concerning the assets held by the same company. The basis for these letters was stated to be information provided to the firm by Plaintiffs but not audited or verified and thus the accountants were making "no representation and provide no assurance regarding the accuracy or completeness of this information".

33.     The March 26, 2020 Taubman Grubman letter relating to Plaintiffs' income stated that "several projects" on which plaintiff Michael Wolff had counted for revenue in 2020 had been "indefinitely postponed." From this limited assertion, apparently based on Plaintiffs' own averments and not on any independent evidence (as to which the accountants disclaimed reliance), Taubman Grubman reached the conclusion that Plaintiffs' income for 2020 "may be $0."

34.     The March 26, 2020 Taubman Grubman letter relating to Plaintiffs' assets stated that for over 20 years plaintiff Michael Wolff had written income-producing pieces for many prominent periodical publications, as well as seven books, that the rights to this body of works constituted assets of plaintiff Michael Wolff's wholly-owned limited liability company, and that it had "generated millions of dollars in copyright and licensing income to date" and were expected to go on generating substantial future income." Such assets had been "previously estimated to be worth $4,000,000," thus yielding "millions of dollars" in income tied to past work, not to work to be performed in the future. Notwithstanding the foregoing, Taubman

- 15 -

Grubman concluded that because several future projects had been postponed, "we cannot put a value on the assets" of the limited liability company.

35.     The Board Package included a commitment letter from Wells Fargo, dated March 16, 2020, confirming that the bank had agreed to provide mortgage financing to Plaintiffs for the transaction in the amount of $1,875,000, *i.e.,* one-half of the purchase price, accompanied by a supplemental financial statement provided to the bank by Plaintiffs on or about March 25, 2020. The financing documents submitted in Plaintiffs' Board Package did not include the information provided to Defendants as referred to in paragraph 25 above or any documentation of royalty cash flow referred to in the March 26, 2020 Taubman Grubman letter identified in paragraph 31 above.

36.     By letter dated April 24, 2020, from its managing agent addressed to Defendants but sent to Plaintiffs' broker "for delivery to all parties involved," the Co-op Corporation advised that "the Board of Directors of 130 East End Avenue Cooperative Corp. has reviewed and not accepted the sale application" for the Apartment transaction.

37.     Thereafter, also on April 24, 2020, Plaintiffs' closing attorney, Seth Steifman, sent by email a letter to Escrowee David W. Shipper demanding return to Plaintiffs of the Contract Deposit in view of the refusal of the Co-op Corporation to consent to the transaction.

38.     Having received word of the demand by Plaintiffs' attorney, Defendants sent to the Escrowee an objection to release of the Contract Deposit pursuant to ¶ 27.1 of the Contract, stating *inter alia* that the "deposit constitutes our damages for Purchasers' misconduct and should be remitted to us." The misconduct referred to was Plaintiffs' submission of a dishonest Board Package, which constituted a bad faith default under ¶ 6.4 of the Contract and justified remittance of the Contract Deposit to Defendants as liquidated damages for Plaintiffs' default.

39.     By letter dated April 28, 2020, the Escrowee advised Plaintiffs' counsel of Defendants' objection, which necessitated non-release of the Contract Deposit, followed by the Escrowee's subsequent receipt of two letters from another attorney for Plaintiffs, one letter demanding information about the escrow account and the other threatening legal action if the Escrowee did not release the Contract Deposit to Plaintiffs.

40.     As of this writing, the parties have asserted opposing claims to the Contract Deposit held by the Escrowee but have agreed that such deposit may remain under the Escrowee's control until the parties either amicably resolve their dispute or a final order not subject to further appeal is issued by the Court directing to whom the Contract Deposit shall be released.

## FIRST COUNTERCLAIM
### (Declaratory Judgment – Contractual Bad Faith)

41.     Defendants incorporate by reference paragraphs 1 through 40 above as if fully set out herein.

42.     The conduct of Plaintiffs as described above constituted bad faith conduct as contemplated in ¶ 6.4 of the Contract. Specifically, Plaintiffs submitted a dishonest Board Package to induce the Co-op Corporation to refuse to consent to the transaction. The Contract expressly recognizes that such a tactic could be engaged in by Plaintiffs and, accordingly, grants the Defendants, as sellers, protection by making the Contract Deposit amount liquidated damages as security against such misconduct.

43.     Plaintiffs' bad faith was compounded by their attempt, just a few days before submitting the Board Package, to extort a reduced purchase price by claiming that they somehow had no assets and no prospect of income because of the Coronavirus pandemic yet were willing to proceed with the transaction at the lower price, on the basis of financial information that

showed that if they terminated the transaction and instead continued to live in their existing

rental residence they would continue to pay rent of more than $13,000 per month.

44.     Upon information and belief, the representations Plaintiffs made in their Board

Package were overtly false, so much so that it may be reasonably inferred that the Board of

Directors of the Co-op Corporation refused consent because they considered Plaintiffs to be

dishonest rather than because the Board believed they lacked financial qualifications.

45.     Indeed, Plaintiffs included a Wells Fargo mortgage commitment letter in the

Board Package that could not conceivably have been issued to a loan applicant who had claimed

to the bank that they had no assets and no current income.

46.     It was obvious to the Board, as it is to any other attentive observer, that Plaintiffs

were making inconsistent representations to different audiences concerning the same alleged

circumstances.

47.     In view of the foregoing, Plaintiffs are in default under the parties' Contract by

reason of bad faith conduct in their application for consent by the Co-op Corporation to their

purchase of Defendants' interest in the Apartment.

48.     Therefore, pursuant to the Contract the Contract Deposit must be released by the

Escrowee to Defendants as liquidated damages, and a declaratory judgment should be issued

directing that such action take place.

### SECOND COUNTERCLAIM
(Declaratory Judgment – Implied Covenant of Good Faith)

49.     Defendants incorporate by reference paragraphs 1 through 45 above as if fully set

out herein.

50.     Like all contracts in New York, the parties' Contract contained an implied

covenant of good faith and fairly which imposed on both Plaintiffs and Defendants, as

purchasers and sellers, the duty to refrain from any knowing and willful conduct by either side aimed at preventing the occurrence of any condition precedent to carrying out the contractual intent or from otherwise depriving the other side of the benefits intended to be conferred by the Contract.

51.     The Contract in this case included a condition precedent to sale consisting of the requirement that the Co-op Corporation give its consent to the transaction based on its review of the Board Package. Purchasers were accordingly subject to an implied covenant of good faith and fair dealing not to make representations or submit misleading information to the Co-op Corporation that could reasonably be expected to induce the Co-op Corporation, through its Board of Directors, not to give its consent to the transaction.

WHEREFORE, Defendants pray for relief in the form of a declaratory judgment declaring that (i) Plaintiffs and Defendants are mutually subject to a binding Contract; (ii) Plaintiffs are in default under the Contract by reason of bad faith conduct in applying for consent by 130 East End Avenue Cooperative Corporation to Plaintiffs' purchase of Defendants' interest in the Apartment; and (iii) accordingly the Escrowee is directed to release the Contract Deposit to Defendants as liquidated damages for Plaintiffs' default, in addition to (iv) reasonable attorney's fees and the costs and disbursements of this action, and (v) for such other and further relief as to the Court may seem just and proper.

Dated: New York, New York
        June 19, 2020

                                        Respectfully submitted,

                                        OFFIT KURMAN P. A.

                                        By:  /s/ Richard G. Menaker

                                        Richard G. Menaker
                                        Stephen M. Forte
                                        10 East 40th Street – 35th Floor

New York, New York 10016
Telephone: (212) 545-1900
Facsimile: (212) 545-1656
RMenaker@OffitKurman.com
Stephen.Forte@OffitKurman.com

*Attorneys for Defendants/Counterclaimants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

MICHAEL WOLFF and VICTORIA WOLFF,     :   Case No.: 1:20-cv-03651-ER
                  :
          Plaintiffs,     :
                  :
    -against-        :
                  :   **CERTIFICATE OF SERVICE**
DAVID W. GLENN and ANGELA GLENN,  :
                  :
         Defendants,   :
       and        :
                  :
DAVID SHIPPER, ESQ., as Escrowee,   :
                  :
      Relief Defendant.  :
-------------------------------------------------------------------X

I, Richard G. Menaker, hereby certify that on June 19, 2020, I caused a copy of the foregoing Answer with Affirmative Defenses and Counterclaims to be served upon the below counsel for plaintiffs via the CM/ECF system following:

Anthony Paduano
Noah Hertz Bunzel
Paduano & Weintraub, LLP
1251 Avenue of The Americas, 9th Floor
New York, NY 10020
Tel: 212-785-9100
Fax: 212-785-9099
Email: ap@pwlawyers.com
      nhb@pwlawyers.com

Dated: June 19, 2020          /s/ Richard G. Menaker
                      Richard G. Menaker